UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA *FILED*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No. **08 MJ 2277** |
| Plaintiff, | *08 JUL 28* |
| | *CLERK, U.S. DISTRICT COURT* |
| v. | *SOUTHERN DISTRICT OF CALIFORNIA* |
| | COMPLAINT FOR VIOLATION OF: |
| 1) Daniel PEREZ-Soto | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) |
| AKA: Sergio PEREZ-Ochoa | |
| 2) Rodolfo ANZALDO-Rangel | Transportation of Illegal ECL |
| AKA: German AGUIRRE-Saenz | Aliens |
| Defendant(s) | |

The undersigned complainant, being duly sworn, states:

On or about **July 25, 2008,** within the Southern District of California, defendants **Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa and Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Federico PEDRAZA-Avalos, Jose De Jesus VILLAGRAN-Palacios, and Maria ALEJANDRE-Cerdejas** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **28ᵗʰ** DAY OF **JULY, 2008**

_____
Jan M. Adler
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Daniel PEREZ-Soto AKA:  Sergio PEREZ-Ochoa
Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Federico PEDRAZA-Avalos, Jose De Jesus VILLAGRAN-Palacios,** and **Maria ALEJANDRE-Cerdejas** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On July 25, 2008 Supervisory Border Patrol Agent J. Viau and J. Callanan were performing linewatch duties, within the Imperial Beach Station area of operations.  At approximately 9:30 am, Agent Callanan received a "citizen's report" from a Kiewit Construction Company worker regarding an unknown water truck leaving their lot near an area commonly referred to as "Whiskey 10".  The Kiewit Construction Company is working along the United States/Mexico International Boundary.  "Whiskey 10" is approximately two miles west of the San Ysidro, California Port of Entry is adjacent to the United States/Mexico International Boundary Fence.

The worker stated to Agent Callanan that he had observed a white water tanker leaving their lot, but that the truck did not belong to the Kiewit Construction Company.  The worker pointed out the white water tanker as it was traveling northbound on Dairymart Road, crossing the Dairymart Bridge.  Smugglers of illegal aliens have frequently been utilizing "copy-cat" vehicles to illegally smuggle their human cargo further into the United States. These vehicles are being used by smugglers in an attempt to blend in with the construction company without raising the suspicion of the United States Border Patrol.

Agent Callanan pulled behind the water tanker as it was entering the northbound Interstate 5 freeway (I-5). As Agent Callanan pulled behind the water tanker, he observed that the license plate had been removed from the water tanker.  Agent Callanan, driving a fully marked, Agency issued emergency vehicle, activated his fully functional emergency lights and siren in an attempt to pull the water tanker over.  The vehicle failed to yield and continued north along I-5.  The tanker truck abruptly drove across three lanes of traffic and exited off of I-5 exit 7A (L Street) in Chula Vista.  The truck drove through a three way stop and turned north onto Industrial Avenue.  The truck then stopped in the middle of the intersection of L Street and Industrial Avenue.  The driver later identified as the defendant **Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa,** then exited the vehicle and attempted to flee on foot westbound on L Street.

After repeated commands to stop the defendant was apprehended by Agent Viau when he was tackled in the median on L Street. As he was being chased, defendant **PEREZ** threw a cellular telephone on the ground, which fell apart on impact into three pieces. Agent Viau struggled to subdue **PEREZ** until Agent Callanan and Border Patrol Agent Alvarez arrived to assist him.  After being secured, Agent Viau queried **PEREZ** as to his immigration status. **PEREZ** admitted to having entered the United States without inspection, and that he is a citizen and national of Mexico. **PEREZ** also stated that he was not in possession of immigration documents that would allow him to enter or remain in the United States legally.  At approximately 9:44 am, Agent Viau placed **PEREZ** under arrest.

CONTINUATION OF COMPLAINT:
Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa
Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz


As **PEREZ** was being arrested, Agent Alvarez looked toward the water tanker and observed the passenger, later identified as defendant **Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz**, climb into the driver's seat and attempt to drive away with the water tanker. Agent Alvarez approached the water tanker with drawn sidearm and ordered **ANZALDO** out of the vehicle. **ANZALDO** ignored Agent Alvarez and attempted to put the water tanker in gear to drive away. Agent Alvarez holstered is weapon, climbed into the cabin of the tanker and physically removed **ANZALDO** from the cab. Agent Alvarez queried **ANZALDO** as to his immigration status. **ANZALDO** admitted to having entered the United States without inspection, and that he is a citizen and national of Mexico. **ANZALDO** also stated that he was not in possession of immigration documents that would allow him to enter or remain in the United States legally. At approximately 9:45 am, Agent Alvarez placed **ANZALDO** under arrest.

After securing the two defendants, a search of the water tanker commenced. Inside of the water tank, Agents discovered 49 individuals packed inside of the empty tank. Fearing that some of the individuals could suffocate inside of the tank due to its small size, the heat emanating from an open hole at the top of the water tank, and the number of individuals packed inside, the group was expeditiously removed. All occupants in the water tank were queried as to their immigration status. Each admitted to having entered the United States without inspection, and that they are citizens and nationals of Mexico. They also stated that they were not in possession of immigration documents that would allow them to enter or remain in the United States legally.

Among the individuals found in the cramped, hot compartment were three pregnant females and one female with an injured ankle that was splinted immediately and transported by ambulance to the hospital for treatment. All of the individuals were placed under arrest and each individual, including defendants **PEREZ** and **ANZALDO**, were subsequently transported to the Imperial Beach Border Patrol Station for processing.

## DEFENDANT STATEMENT (Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa):

**PEREZ** was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement. **PEREZ** stated that he was a citizen and national of Mexico without valid immigration documents to enter or remain within the United States legally.

**PEREZ** admitted that on July 25, 2008, he was the driver of the water truck which was found to contain forty-nine undocumented aliens. **PEREZ** stated that he was aware that all of the people that were inside the truck's water tank with him were unlawfully in the United States. **PEREZ** stated that he was aware that it was a crime to smuggle and/or transport undocumented aliens.

**PEREZ** stated that on July 25, 2008, at approximately 5:30 a.m., a smuggler named Ruben picked him up in in Tijuana, Baja California, Mexico and drove him to a parking lot where he met with smugglers "Migue" and "Paleton". **PEREZ** stated that Ruben told him that he would be paid and unknown dollar amount for transporting undocumented immigrants and that additionally, he would not have to pay to be crossed into the United States. **PEREZ** stated that they drove to the border fence in the area of Colonia Soler in Tijuana.

**PEREZ** stated that after arriving in the border area, at approximately 7:30 am "Migue" told him to get ready to cross north because the white water tank truck had arrived. **PEREZ** said that "Migue" and "Paleton" and several other unknown smugglers set up a ladder on the border fence. **PEREZ** said that "Migue" jumped north over the border fence first and that he followed, while "Paleton" jumped over the border fence third behind him. **PEREZ** said that the water truck had pulled up approximately fifteen feet north of the border

CONTINUATION OF COMPLAINT:
Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa
Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz

fence as they approached. **PEREZ** said that an unknown male driver exited the water truck and told him to wear a green colored vest and hard hat that were inside the truck. **PEREZ** said that he entered the driver's seat and took over as the driver, while the unknown male driver ran back south into Mexico. **PEREZ** said that shortly thereafter he observed two large vans drop off people on the Mexico side of the border fence. **PEREZ** said that all the undocumented immigrants began to jump north over the border fence and began to climb into the water tank of the truck. **PEREZ** said that "Migue" and "Paleton" instructed the people to enter through the bottom of the water truck's tank area. **PEREZ** said that after the forty-plus undocumented immigrants loaded into the tank, he saw an unknown male enter the passenger side of the water truck. **PEREZ** said that he then drove off and was able to see "Migue" and "Paleton" go back south towards Mexico.

**PEREZ** said that he was communicating with "Migue" via Nextel cell phone radio as he drove away in the water truck in order to get his route information. **PEREZ** stated that while continuing north over the I-5 overpass bridge, he observed a Border Patrol vehicle behind him. **PEREZ** stated that he contacted "Migue" via Nextel radio and told him that the Border Patrol was trying to stop him. **PEREZ** said that as he was driving north on I-5, another marked Border Patrol service vehicle began to follow him. **PEREZ** said that shortly thereafter, he could hear and see that both Border Patrol vehicles activated their emergency lights and sirens. **PEREZ** said that he got off the freeway, trying to get away from the agents. **PEREZ** said that he bailed out of the water truck and ran away for a short distance and was quickly apprehended by a Border Patrol Agent. **PEREZ** said that after a short struggle with the Border Patrol Agent he was handcuffed and arrested and taken into custody.

## DEFENDANT STATEMENT (Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz):

**ANZALDO** was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement. **ANZALDO** stated that he was a citizen and national of Mexico without valid immigration documents to enter or remain within the United States legally.

**ANZALDO** stated that his brother Jose Luis introduced him to an unknown smuggler near the port-of-entry in Tijuana. **ANZALDO** said that the unknown smuggler agreed to smuggle him up to Los Angeles as "a favor", and that he was going to waive the smuggling fee. **ANZALDO** stated that he was told by the other smugglers that he was to "help them with the ladders" and to "take care of the ladders". **ANZALDO** said that he was taken in a pick up truck, along with five guides, and a number of ladders, to the area of the border fence where the group was later crossed. He stated that they had arrived before the rest of the smuggled aliens, who arrived about one and a half hours later, in two vans. He said that he didn't know how many smuggled aliens there were, but there were 20 or 30 or more of them.

**ANZALDO** said that the guides placed the ladders over both sides of the border fence, which was made of a steel laminate material. **ANZALDO** stated that they began climbing over and that he grabbed and held the ladder, supporting it while the people were climbing down. **ANZALDO** said that there was a water tanker truck driving around, doing loops and spraying water, because he could see the dust rising. When asked, **ANZALDO** stated that one of the guides with the ladders called the truck via cell phone, to tell the driver to come get them.

**ANZALDO** stated that he was left there holding the ladder as the other aliens ran north and began climbing into the water tanker through an opening underneath the tank. **ANZALDO** stated that he ran up to the truck, decided it was too crowded inside the tank, and so he jumped in the vehicle's cab, sitting in the passenger seat next to the driver. When asked, **ANZALDO** said that the driver had a fluorescent safety vest and hard-hat on.

**CONTINUATION OF COMPLAINT:**
**Daniel PEREZ-Soto AKA: Sergio PEREZ-Ochoa**
**Rodolfo ANZALDO-Rangel AKA: German AGUIRRE-Saenz**

ANZALDO stated he was told to crouch down by the driver and shortly thereafter, he realized that they were being chased and were moving really fast. ANZALDO said that he could hear the sirens of the patrol vehicles and that he kept telling the driver to slow down until finally the driver jumped out of the vehicle, ran away, and was chased by the Border Patrol. ANZALDO stated that he dove over to the driver's side and pushed the brake pedal with his hand. He then sat up in the driver's seat and began holding the brake down with his foot.

ANZALDO stated that his brother Victor Miguel AGUIRRE-Saenz AKA: "El Migue" is an alien smuggler. When asked where his brother "El Migue" could be found, ANZALDO stated that he didn't know. When asked for his brother "El Migue's" phone number, ANZALDO stated that he didn't know.

ANZALDO stated that he was aware that the group did not have documents to legally enter the United States. ANZALDO was shown a set of 50 color Polaroid photographs, of all of the individuals detained on scene in the event. ANZALDO stated that Photo #48 appeared to be the driver of the water truck (photo #48 is defendant Daniel PEREZ-Ochoa)

## MATERIAL WITNESSES STATEMENTS:

Material witnesses Federico PEDRAZA-Avalos, Jose De Jesus VILLAGRAN-Palacios, and Maria ALEJANDRE-Cerdejas agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They admit to entering the United States illegally. The material witnesses stated that they were to pay between $2,000.00 to $3,000.00(USD) to be smuggled into the United States.

Executed on July 26, 2008, at 4:30 P.M.

Ilsa M. Struve
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 4 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on July 25, 2008, in violation of Title 8, United States Code, Section 1324.

Leo S. Papas
United States Magistrate Judge

7/26/08 - 520 Am
Date/Time